```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
SUNOCO, INC. (R&M),                      :    05 CIV. 7984 (DLC)
                                         :
                Plaintiff,               :    OPINION & ORDER
                                         :
        -v-                              :
                                         :
HONEYWELL INTERNATIONAL, INC.            :
                                         :
                Defendant.               :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiff:
Frederick D. Berkon
Thomas K. Richards
Leader & Berkon LLP
630 Third Avenue
New York, NY 10017

Mark D. Wegener
Martin F. Cunniff
Howery LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

For Defendant
Veronica E. Rendon
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022

Anton R. Valukas
Terri L. Mascherin
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

DENISE COTE, District Judge:

On January 13, 2006, Honeywell International Inc. ("Honeywell") moved to confirm arbitration awards entered in its favor on September 2 and 21, 2005 and January 11, 2006, against Sunoco, Inc. ("Sunoco"). Sunoco has responded with a motion to

vacate. For the following reasons, the arbitration awards are confirmed.

## Background

The background of this dispute was summarized in an Opinion of October 13, 2005, denying Sunoco's motion for a preliminary injunction. Briefly, Sunoco sells the petrochemical phenol to Honeywell, which uses the product in its manufacture of nylon. The key ingredient of phenol is cumene, and an agreement between the two companies ("Agreement") provides a methodology for pricing cumene through the end of 2004, and thereafter until a revised pricing methodology is established either through agreement or arbitration. Honeywell came to believe that Sunoco was overcharging it for cumene and demanded arbitration to determine damages for that overpricing. Through its motion for an injunction, Sunoco sought to stop the arbitrator in the Damages Arbitration from setting the price for cumene during the year 2005. For the reasons explained in the October 13 Opinion, familiarity with which is assumed, Sunoco's motion was denied. See Sunoco, Inc. v. Honeywell Int', Inc., 2005 WL 2259673 (S.D.N.Y. Oct. 13, 2005). A hearing in a second arbitration between the parties, referred to as the Reopener Arbitration since it will set a new methodology for the pricing of cumene, is scheduled to begin in April 2006.

The arbitrator in the Damages Arbitration ("Arbitrator") found by clear and convincing evidence that Sunoco engaged in a

"dishonest breach of its duty of good faith and fair dealing under the Agreement" by manipulating the published benchmark for setting the price of cumene, producing an "artificial, inflated, manipulated" marker. The Arbitrator awarded Honeywell damages from June 2003 through 2004 in the amount of $63,698,798 for cumene overcharges and $1,832,996 for electricity overcharges. He awarded damages from January 2005 through April 2005 of $11,203,778, and from May 2005 through September 2005 of $12,824,014, for cumene overcharges. He awarded prejudgment interest through December 2005 of $3,581,245 on the cumene overcharges, and $77,174 on the electricity overcharges. He awarded attorneys' fees in the amount of $2,041,691, and costs of $30,847. The Arbitrator also set the price of cumene from October 1, 2005 until a new price is set and takes effect by agreement of the parties or as a result of the Reopener Arbitration.

As found by the Arbitrator, Sunoco's price manipulation can be summarized as follows. Sunoco and Honeywell agreed, for reasons described by the Arbitrator, that the largest component of the price of the phenol that Sunoco would sell to Honeywell would be Sunoco's cost of obtaining cumene. They agreed to use what was called the "freely-negotiated" contract posting or marker price for cumene that was published by Chemical Market Associates, Inc. ("CMAI") as an objective measure of the price a billion pound purchaser of cumene would pay in arm's-length transactions. Under the Agreement, Honeywell was required to pay

3

Sunoco the invoiced amount within three days, and wait until the end of the year to resolve any disputes.

In 2003, Sunoco created an opportunity to manipulate the marker price.  Sunoco negotiated an inflated price for one barge of cumene that it bought from a single third party and reported that price to CMAI as the freely-negotiated contract marker price.  As of that time, CMAI had no other source for a marker price, and published the information that Sunoco gave to it.  While Sunoco paid the third party more than it had to, it netted scores of millions of dollars through overcharging Honeywell based on the sham marker it had created.  This manipulated marker was consistently several cents higher than the actual prices paid by Sunoco under its contracts with its cumene suppliers.  After CMAI received complaints that the freely-negotiated contract price that CMAI published did not reflect contemporary prices, it began in 2003 also to publish a formula based contract posting for cumene.  This formula based price was always several cents lower than the "freely-negotiated" marker price it also posted.  CMAI stopped publishing the marker price as of January 1, 2005, because the third party who had participated in the single barge transactions with Sunoco refused to continue those negotiations after it learned of Honeywell's concerns about the validity of the marker price.  Since that date, CMAI has only published a formula contract price for cumene.  The Arbitrator chose this price as the reasonable price for cumene until the Reopener Arbitration sets a new price.

Before addressing Sunoco's arguments, one other component of the background to this litigation must be described.  A tactical decision that Sunoco made at the outset of this dispute is the source of many of the issues that Sunoco has identified in its attack on the Arbitrator's decisions.  Until quite recently, Sunoco took the position that the Reopener Arbitration could only set a new price for cumene prospectively, and therefore that Honeywell could not demand that the Reopener Arbitration set the price of cumene from January 1, 2005 forward.  As a result, Honeywell sought damages within the Damages Arbitration for not just Sunoco's overcharging scheme in 2003 and 2004, but also the overcharging that continued in 2005 as the Damages Arbitration proceeded.  Sunoco objected and sought a ruling from the Arbitrator on whether the Damages Arbitration was the proper forum for a claim of overcharges in 2005, characterizing the question as one concerning the "scope" of the arbitration.  The Arbitrator concluded that the existence of the Reopener Arbitration does not preclude Honeywell from receiving damages for Sunoco's ongoing breaches until the Reopen Arbitration sets the future price of cumene.  With this background, Sunoco's specific challenges to the arbitration awards are addressed in turn.

## Discussion

Sunoco contends that the Arbitrator did not have the authority to award relief for breaches occurring in 2005, applied

the wrong legal standard in deciding that Sunoco had breached its duty of good faith and fair dealing, and committed misconduct. A court's review of an arbitration award is "severely limited" so as to not unduly frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted). "The showing required to avoid summary confirmation of an arbitration award is high," id., and a party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).

1. Authority to Award Damages for 2005

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., permits vacatur of an arbitration award "where the arbitrators exceeded their powers." Id. § 10(a)(4). Courts should "accord[] the narrowest of readings" to this provision if the disputed issue is properly subject to arbitration under the parties' agreement. Westerbeke Corp. v. Daihatsu Motor Co. Ltd., 304 F.3d 200, 220 (2d Cir. 2002). Sunoco makes several arguments concerning the authority of the Arbitrator to award damages for Sunoco's pricing of cumene in 2005. None of these arguments is persuasive.

First, Sunoco contends that the structure of the Agreement's

arbitration provisions precluded the Arbitrator from awarding damages for its 2005 pricing of cumene. Section 6.02 of the Agreement provides that "[o]n or after January 1, 2005, and from time to time thereafter, but no more frequently than once every three years, either party may request a reopener of this methodology used to determine the price of cumene then in effect." Sunoco argues that this represents a specific agreement on how to proceed with disputes over pricing after January 1, 2005, and that this provision supersedes the general arbitration clause in Section 20. Section 20 states that "any dispute, controversy or claim" arising under the Agreement that cannot be settled amicably within ninety days "shall be settled . . . by an arbitrator . . . using the Commercial Arbitration Rules of the American Arbitration Association [("AAA")]."

Sunoco asked the Arbitrator to determine whether Section 6.02 limited the scope of the Damages Arbitration to the award of damages for the period before 2005. After full briefing, the Arbitrator determined that accepting Sunoco's positions (1) that the Reopener Arbitration could only adjust the pricing methodology prospectively, and (2) that the Damages Arbitration could not award damages for 2005, "would leave Honeywell without any meaningful remedy for a grievous injury" for the year 2005 and up until the Reopener Arbitration had set a new methodology.

Under federal law, questions of whether an issue is arbitrable are to be decided by a court "unless there is a clear and unmistakable agreement to arbitrate arbitrability." Contec

7

Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 n.1 (2d Cir. 2005) (citation omitted). A broadly worded arbitration clause, such as that included in Section 20, will satisfy this standard, except where an agreement also contains "a specific clause assigning a certain decision" to another decisionmaker. Katz v. Feinberg, 290 F.3d 95, 97 (2d Cir. 2002). In such circumstances, the Second Circuit has held, there is an ambiguity as to the parties' intentions regarding arbitrability and the question must be answered by a court, without deference to the views of the arbitrator. Id. Relying on this case law, Sunoco urges this Court to disregard the Arbitrator's decision that he had the power determine 2005 pricing, and to read the Agreement to require disputes over this pricing to be settled by the Reopener Arbitration.

Sunoco errs in its reading of the Agreement. Section 6.02 of the Agreement states "[i]f the parties are unable to agree on a new methodology" for pricing after January 1, 2005 "the dispute will be resolved in accordance with the provisions of Section 20." This is not a carve-out from arbitration of the type considered by the Second Circuit in Katz; on the contrary, Section 6.02 explicitly confirms that such disputes will be subject to arbitration. Moreover, Section 20 (and Section 6.02, which incorporates it by reference) explicitly provides that arbitrations will follow the rules of the AAA. The Second Circuit has held that the incorporation of these rules into a contract "serves as clear and unmistakable evidence of the

8

parties' intent to delegate such issues [of arbitrability] to an arbitrator" Contec, 398 F.3d at 208.[1]

Sunoco has not shown that the Arbitrator exceeded his authority in deciding the scope of the issues to be arbitrated before him. Indeed, the Agreement adopts the AAA rule that arbitrators have the power to rule on the scope of any arbitration agreements. Having thus agreed to submit such matters to the Arbitrator, Sunoco cannot now be heard to argue that the Arbitrator's decision is entitled to less deference merely because Sunoco dislikes the outcome.

Nor has Sunoco shown that the Arbitrator was without power to award damages related to 2005 pricing once he determined that it was within the scope of the arbitration agreement. The Agreement provides that the current pricing methodology will remain "in effect" until it is revised pursuant to the provisions of the Agreement that describe the reopening of the pricing methodology. Given this provision, Sunoco has not shown that the Arbitrator exceeded his authority in ruling that the Damages Arbitration included the issue of whether it was appropriate to award damages for Sunoco's manipulative pricing scheme up until the Reopener Arbitration modified the pricing methodology.

Secondly, Sunoco argues that the Arbitrator exceeded his

---

[1] "Rule 7 of the AAA Commercial Arbitration Rules states with respect to jurisdiction that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" Contec, 398 F.3d at 208 (quoting Am. Arbitration Ass'n Rule R-7(a)).

powers by setting a new pricing methodology for cumene to apply to the period between October 2005, and the adoption of a new pricing methodology through the Reopener Arbitration.[2] As described above, the parties had incorporated the CMAI "freely-negotiated" contract marker for cumene into the Agreement to represent an objective measure of the price a purchaser would pay in an arm's-length market transaction. As of January 1, 2005, CMAI stopped publishing this marker; the only price it published for cumene thereafter was a formula contract posting. Yet despite the fact that CMAI no longer published the freely-negotiated contract marker, Sunoco continued to charge Honeywell its estimate of what the marker price would be. The Arbitrator found that the price charged by Sunoco was "arbitrarily chosen and unilaterally imposed" and that "there [was] no evidence that Sunoco's new price to Honeywell reflects the price [a purchaser] would get in the open market."

Relying on a provision of Pennsylvania's Uniform Commercial Code ("UCC"), the Arbitrator concluded that if a contract price "is to be fixed in terms of some agreed marker or other standard as set or recorded by a third person or agency and it is not so

---

[2] Sunoco's argument that the Arbitrator lacked the qualifications set out in Section 6.02 is beside the point. That section of the Agreement applies to the arbitrator for the Reopener Arbitration. As explained above, the Arbitrator did not set out to establish a methodology for pricing going forward in a Reopener Arbitration. Instead, the Arbitrator sought to provide Honeywell with a remedy for Sunoco's ongoing breach of the Agreement until a Reopener Arbitration could be completed. Sunoco does not contend that the Arbitrator lacked the qualifications required by Section 20, which applies to the Damages Arbitration.

set or recorded, then the price under the contract should be a reasonable price." (citing 13 Pa. Cons. Stat. § 2305). Finding that a reasonable price would be predominantly determined by the prevailing market price, and after taking fact and expert testimony, the Arbitrator found that the "CMAI formula contract price for cumene during the applicable time constitutes a reasonable standard for measuring damages" under the UCC. The Arbitrator used this measure not only to award damages through September 2005, but also to set the price for cumene for the period that would follow until the Reopener Arbitration set a new methodology. The Arbitrator found that this declaratory relief was necessary because without it "Sunoco will continue to overcharge Honeywell as long as the price void exists."

Sunoco protests that in issuing this declaratory relief, the Arbitrator exceeded his powers. Sunoco argues that by setting a "reasonable price" for cumene, the Arbitrator ignored the Agreement's requirement that the price be set in reference to a "substitute publication well recognized in the petrochemical industry . . . whose market reports most closely resemble the CMAI report" when the CMAI contract marker ceases to be published. Sunoco has not shown that the Arbitrator violated this provision of the Agreement by choosing to use the published CMAI formula contract price as the standard. Sunoco has not shown that that published price is not well recognized in the industry or that it does not most closely resemble the CMAI report. Indeed, in making this objection Sunoco has not pointed

11

to any more suitable alternative that the Arbitrator should have used as a benchmark for a reasonable price. Apparently, instead of identifying any more suitable published marker, Sunoco wishes to set its own price unilaterally without reference to a published benchmark.[3]

Finally, Sunoco argues that the Arbitrator exceeded his powers in calculating damages for the period 2005 because he "ignored" the fact that Sunoco's 2005 invoices were always "provisional." The Arbitrator did not ignore this contention; he rejected it. The Arbitrator noted that the invoices did not bear any indication that they were provisional. Sunoco invented this argument only after the Arbitrator made his initial ruling in Honeywell's favor in September 2005. The Arbitrator added that Sunoco's new contention was in conflict with its avowed position that the Reopener Arbitration could not set a pricing mechanism retroactively. In sum, Sunoco has not shown that the Arbitrator ignored its contention, or exceeded his authority.

2. Manifest Disregard of the Law

Sunoco next contends that the Arbitrator's awards were in manifest disregard of Pennsylvania contract law, which governs

---

[3] The Arbitrator's references to the fact that the arbitrator in the Reopener Arbitration may decide to adjust the price retroactively is not, as Sunoco argues, evidence that the Arbitrator exceeded his authority within the Damages Arbitration. It is instead a practical response to the fact that, after receiving an adverse ruling in the Damages Arbitration, Sunoco revised it position within the Reopener Arbitration in September 2005 to argue that that proceeding could set prices retroactively.

the Agreement. In addition to the grounds afforded by statute, a court may vacate "an arbitral award that exhibits a manifest disregard of the law." Duferco, 333 F.3d at 388 (citation omitted). The Second Circuit has instructed that this is a "doctrine of last resort -- its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA appl[ies]." Id. at 389. A party seeking vacatur on this ground must prove that an arbitrator was "fully aware of the existence of a clearly defined legal principle, but refused to apply it, in effect, ignoring it." Id.

Under the Pennsylvania Commercial Code, a claim of breach of the duty of good faith and fair dealing against a merchant has a subjective and objective component. See 13 Pa. Cons. Stat. § 2103 (2004) ("In the case of a merchant, good faith means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."). Sunoco contends that the Arbitrator only addressed the subjective prong of the test and ignored the objective standard. According to Sunoco, the Arbitrator failed to find that Sunoco did not comply with reasonable commercial standards.

Sunoco's claim can be swiftly rejected. Supported by detailed findings, the Arbitrator concluded that Sunoco created a contract with a supplier for a sham price, reported that sham price to the public reporting service, which published it as a bona fide industry marker, all in a calculated effort to defraud

13

Honeywell. These findings address both the subjective and objective standards that apply to a claim that Sunoco breached its duty of good faith and fair dealing. The Arbitrator's decision provides ample support to find that Sunoco did not comply with reasonable commercial standards. Sunoco has not shown any "egregious impropriety" that would justify invoking this exceptional doctrine to set aside the Arbitrator's decision. Duferco, 333 F.3d at 388.

3. Misconduct

Finally, Sunoco contends that the Arbitrator committed misconduct in several ways since issuing an award on September 21, 2005. The FAA permits vacatur of an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy[,] or for any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Where evidentiary rulings are at issue, the Second Circuit has explained that review under this provision "is restricted to determining whether the procedure was fundamentally unfair." Tempo Shain Corp. v. Bertek, 120 F.3d 16, 20 (2d Cir. 1997). Sunoco has not shown that the Arbitrator has engaged in any misconduct or that the arbitration procedures were fundamentally unfair to it.

First, Sunoco argues that the Arbitrator was without power in November 2005 to consider an ongoing award of damages since the November proceeding was to address solely the issue of

14

attorney's fees. Sunoco is attempting to rewrite history. In its September briefing to this Court in support of its motion for a preliminary injunction, Sunoco explicitly acknowledged that the additional proceedings before the Arbitrator would address continuing damages. The September 2, 2005 award gave notice that there would be further proceedings to award "an additional amount . . . for 2005." Similarly, because Sunoco has not shown that the Arbitrator closed the record with respect to an award of additional damages for ongoing violations of the duty of good faith and fair dealing, Sunoco's related argument that the Arbitrator was without authority to award additional damages for a breach in 2005 is rejected.

Next, Sunoco contends that the Arbitrator improperly struck evidence it offered for the November 2005 hearing. This is nothing more than a disagreement regarding an evidentiary ruling. Five days before the November 8, 2005 hearing Sunoco sent Honeywell notice of a new method for pricing cumene. At the hearing it sought to introduce a spreadsheet summarizing data that supported the new methodology. The Arbitrator gave Sunoco until November 16 to produce the underlying data to Honeywell for review, and when Sunoco did not do so, he struck the exhibit and related testimony. Sunoco has not shown any error, much less misconduct.

Finally, Sunoco contends that the Arbitrator improperly left the record open in his last award, the award of January 11, 2006. At that time, the Arbitrator awarded damages through September

15

2005, which was the month covered by the last invoice served by Sunoco, and left the record open if the parties were unable to agree on the amount of damages incurred between October 1, 2005 and January 11. He noted that he retained jurisdiction "to ensure compliance with the provisions of this Award and to resolve subsequent disputes concerning this Award." In January 2006, Sunoco gave notice that it would begin charging Honeywell the price the Arbitrator declared in his award to be a reasonable price.

Again, Sunoco has not shown that the Arbitrator engaged in any misconduct by leaving the record open. The record was only left open as to matters on which the Arbitrator could not yet rule. To the extent that Sunoco complies with the rulings made by the Arbitrator as to a reasonable price for cumene until a new pricing mechanism is established by the Reopener Arbitration, there will be no need for further proceedings.

## Conclusion

Honeywell's motion to confirm arbitration awards entered in its favor is granted. Sunoco's cross-motion to vacate the awards is denied. The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
March 21, 2006

_____
DENISE COTE
United States District Judge

16